IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROB STAR, DERIVATIVELY AND ON BEHALF OF ALL NOMINAL DEFENDANTS, OLDFIELD COMMUNITY ASSOCIATION, LLC AND OLDFIELD CLUB, LLC, AND ON BEHALF AND FOR OLDFIELD COMMUNITY ASSOCIATION, LLC'S AND OLDFIELD CLUB, LLC'S RESPECTIVE MEMBERS, | ) ) ) ) ) ) ) ) ) | Civil Action No. 9:17-cv-02489-DCN **SPECIAL MASTER'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR STAY PENDING RESOLUTION OF RELATED CASES AND PLAINTIFF'S CROSS-MOTION TO AMEND COMPLAINT** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| TI OLDFIELD DEVELOPMENT, LLC, *et al.*, | ) ) | **ECF Nos. 16, 20, 22, 24, 26, 27, 28, 53, 54, 55, 56, 58, 61, 65** |
| Defendants. | ) | |

Currently before the undersigned are the Motions of numerous Defendants[1] to dismiss the Amended Complaint (ECF # 52) or stay this action pending the resolution of related cases 9:17-cv-00452-DCN and 9:17-cv-00794-DCN.  The Motions are before the undersigned, sitting as Special Master, pursuant to the March 30, 2018 Order of the United States District Court for the District of South Carolina, the Honorable David C. Norton.  I heard the Motions on July 6, 2018, and they are now ripe for disposition.  Having reviewed the memoranda and exhibits, and hearing argument of counsel, I make the following Report and Recommendation.

## BACKGROUND

Oldfield is a private residential and golf community in Bluffton, South Carolina.  It was created on November 17, 2000, by a Declaration of Covenants, Conditions, and Restrictions

---

[1] The only Defendants that did not file a motion to dismiss are Jamie Selby and Elliot Group Holdings, LLC.  However, counsel for Selby and Elliot Group appeared at the hearing and agreed with the arguments of the moving Defendants.

recorded by Oldfield, LLC, the declarant and original developer of Oldfield. (ECF # 52 ¶ 25). Oldfield, LLC, planned over 500 residential homes, a golf course, and other amenities that include pools, dining and meeting facilities, and an outfitters center. *Id.* at ¶ 69. The Declaration provides for the organization of Oldfield Club and Oldfield Community Association. *Id.* at ¶ 23. Oldfield Club ("OC") operates and maintains the amenities at Oldfield, specifically the recreational and social facilities. *Id.* Oldfield Community Association ("OCA") is a property owners' association that operates all club property not defined as a club facility. *Id.* Each entity is governed by a board of directors. *Id.* at ¶¶ 26-27. All property owners are members of OC and OCA. *Id.* at ¶ 28.

In 2010, the developer sold or assigned the remaining lots and its development rights to TI Oldfield Development, LLC, and TI Oldfield Operations, LLC. *Id.* at ¶ 70. TI Oldfield Development and TI Oldfield Operations are subsidiaries or affiliates of defendants SF Capital[2], SF Operations, and Oldfield Holdings GA (ECF # 52 ¶ 8). They are collectively referred to as "TI Oldfield" as any distinctions among them are irrelevant for purposes of the motions. From 2010 through the end of 2015, TI Oldfield held the right to appoint a majority of directors on the OC and OCA boards of directors. *Id.* at ¶¶ 70, 88-89. Defendants William Stolz and Phillip Galbreath are principles of TI Oldfield and served as board members of the TI Oldfield, OCA, and OC boards of directors. *Id.* at ¶¶ 11-12. In 2016, TI Oldfield turned over control of the club property and facilities to OC and OCA, but retained the right to appoint a minority of directors to the boards. *Id.* at ¶¶ 89, 92. In 2016, OC and OCA held board elections and now have a majority of directors elected by the community.

---

[2] SF Capital states in its motion to dismiss that the Court lacks personal jurisdiction over it. (ECF # 22-1 p. 2). At the hearing, counsel stated it was not pursuing that argument at this time. Therefore, I do not address it.

Defendant Oldfield Community Council is a non-profit corporation that functioned as an advisory council to perform due diligence as to whether turnover was warranted. (ECF # 52 ¶¶ 6-7, 61). It dissolved in 2016, shortly after turnover occurred. *Id.* at ¶¶ 6-7. Defendant Richard Price is a resident of Oldfield and served as a member of the OCA and Oldfield Community Council boards of directors. (ECF # 52 ¶ 13). Defendant Jay Barr is a resident of Oldfield and served as a board member of the OC and Oldfield Community Council boards of directors. *Id.* at ¶ 14.

This is a derivative action brought by Derivative Plaintiff Rob Star ("Plaintiff") on behalf of the members of OC and OCA. Plaintiff is a resident of Oldfield and a social member of OCA and club member of OC, meaning he is not a member of the golf club at Oldfield. (ECF # 52 ¶ 1). Plaintiff disputes numerous actions taken by various entities involved in the ownership, operation, and turnover of Oldfield and alleges TI Oldfield dominated and controlled the OC and OCA boards of directors (before and after turnover) to the detriment of the members. *Id.* at ¶ 70.

## I.     PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANTS

A background of the various allegations is necessary to determine whether this action is duplicative of the related actions already brought by OC and OCA, and is relevant to whether Plaintiff made sufficient demands for the OC and OCA boards to take action on these allegations under Fed. R. Civ. P. 23.1.

There are numerous OCA funds and accounts created by the Oldfield governing documents. Plaintiff alleges TI Oldfield misappropriated or failed to fund some of them. In 2011, TI Oldfield repurposed approximately $480,000.00 from the community enhancement fund to a funding source for the capital reserve fund, thereby reducing TI Oldfield's contributions to the capital reserve fund. (ECF # 52 ¶¶ 100-06). From 2011 to 2015, TI Oldfield failed to adequately fund the capital reserve fund, resulting in a shortfall of approximately $648,545.00. *Id.* at ¶¶ 107-

11. It underfunded the OCA general operating account. *Id.* at ¶¶ 112-14. The total amount of shortfalls is approximately $2.5 million, which necessitated OCA's 10% increase in assessments to members. *Id.* at ¶ 117.

In 2013, TI Oldfield sold numerous lots in Oldfield to Bald Eagle Partners, LLC, and BEP Oldfield, LLC,[3] (collectively "BEP"). (ECF # 52 ¶¶ 17, 74-75. As to some of the lots, TI Oldfield transferred only its declarant rights, but not the obligation to pay dues to OC. *Id.* at ¶¶ 74-75. Plaintiff alleges this dues shortfall caused financial damage to OC and OCA members to carry the costs of operation. *Id.* at ¶¶ 85-86. When BEP purchased the lots, it obtained the right to appoint a board member to OCA. *Id.* at ¶ 88.

In 2015, TI Oldfield turned over control of the community to OC and OCA. (ECF # 52 ¶ 92). When TI Oldfield turned over the golf club to OC, it allegedly violated the terms of the transfer agreement by turning over the golf club with a failing infrastructure, operational deficits, and less equity memberships sold than are required to trigger a turnover. *Id.* at ¶¶ 121-27.

The Greeters Store is a building at the entrance of Oldfield that houses security cameras and a post office and serves other community functions. (ECF # 52 ¶ 128). In October 2016, TI Oldfield conveyed the Greeters Store to subsidiary Oldfield Holding, which four days later sold it to Elliot Group Holdings for $575,000.00. *Id.* at ¶ 141. Elliot Group Holdings was formed by Jamie Selby, who worked as the general manager of OC at the time of this transaction. *Id.* at ¶¶ 128-29. He was fired after OC discovered the sale of the Greeters Store. Plaintiff alleges TI Oldfield wrongfully converted the Greeters Store for its own use rather than turning it over to OC and OCA, and that TI Oldfield conspired with Selby to sell the store to the detriment of OC and

---

[3] BEP Oldfield is a wholly owned subsidiary of Bald Eagle Partners. (ECF # 27-1 p. 2).

OCA. *Id*. at 130-143.  Plaintiff also alleges Selby's actions constitute a breach of his employment contract. *Id.* at 133.

Plaintiff alleges TI Oldfield is divesting itself of assets to become judgment-proof and still exerts control over certain issues and property at Oldfield through TI Oldfield and BEP's ability to appoint a member to the OC and OCA boards of directors. (ECF # 52 ¶¶ 145-46, 150-53).

## II.    RELATED PENDING ACTIONS

There are numerous pending actions related to the pre- and post-turnover events at Oldfield.  In 2016 Jamie Selby filed an action in state court against OC relating to his termination after he purchased the Greeters Store, Case No. 2016-CP-07-02436. (ECF # 20-2).  OC filed counterclaims against Selby for breach of fiduciary duty, fraud, breach of contract, and negligence, and filed third party claims against Selby and Elliot Group Holdings for civil conspiracy, interference with contractual relations and tortious interference with a contract, and unjust enrichment. *Id.* at pp. 17-26.

OC and OCA filed separate lawsuits that arise from the same general facts as those set forth by Plaintiff in this derivative action. *Oldfield Club v. TI Oldfield Development, LLC, et al.*, 9:17-cv-00452-DCN; *Oldfield Community Assoc. v. TI Oldfield Development, LLC, et al.*, 9:17-cv-00794-DCN.  OC and OCA filed suit against the TI Oldfield entities, Jamie Selby, Elliot Group Holdings, Phillip Galbreath, William Stolz, and Amy Heicher (an OC board member employed by TI Oldfield).  OCA additionally named as defendants BEP and two prior OCA board members. Plaintiff filed a motion to intervene in these actions, which the Court denied on August 31, 2017. (ECF # 50, 9:17-cv-00452-DCN).  The Court found denial of the motion "would not impede [Plaintiff's] ability to protect his interests, as he can file a separate action in this court" and "[t]o the extent [Plaintiff] possesses any interest in the subject matter of the underlying [OC and OCA]

actions, he has failed to demonstrate that OCA and OC cannot adequately represent those interests." *Id.*

## III.    PROCEDURAL HISTORY OF THIS DERIVATIVE ACTION

Plaintiff filed the original Complaint on September 18, 2017. (ECF # 1). Defendants filed motions to dismiss. (ECF #s 16, 20, 22, 24, 26, 27, 28). Plaintiff filed an omnibus memorandum in opposition to the motions and, alternatively, a cross-motion for leave to file an amended complaint if the Court found the Complaint deficient for any of the reasons stated in the motions to dismiss. (ECF # 36 p. 15). The Court issued a text order granting Plaintiff "leave to file an amended complaint, as requested in his omnibus response." (ECF # 51. Plaintiff filed an Amended Complaint on January 25, 2018, that included the addition of over four hundred pages of exhibits intended to show compliance with the Fed. R. Civ. P. 23.1 demand pleading requirements for a derivative action. (ECF # 52). Defendants again filed motions to dismiss, incorporating their prior motions and asserting the Amended Complaint did not cure the alleged deficiencies.

Defendants argue Plaintiff fails to satisfy Fed. R. Civ. P. 23.1 regarding the prerequisites and pleading requirements for a derivative action because Plaintiff's action is duplicative of those already pending, Plaintiff failed to plead with particularity that he demanded OC and OCA take the actions he asserts in this lawsuit, the boards' decisions as to litigation are protected by the business judgment rule, and Plaintiff is not similarly situated to and does not fairly and adequately represent other members. (ECF #s 16, 20, 22-1, 24, 26-1, 27, 28-1). Defendants Oldfield Community Council, Jay Barr, Richard Price, and BEP argue Plaintiff fails to state a claim against them pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #s 24, 27, 28-1).

In an omnibus memorandum in opposition to the motions to dismiss, Plaintiff responds that the exhibits to the Amended Complaint show he made adequate demands and he made demands

by way of filing his motion to intervene in the OC and OCA actions. (ECF # 65 pp. 3-7). To the extent any of his claims are duplicative of those asserted by OC and OCA, Plaintiff argued "they must be asserted in the Amended Complaint as they are integral to demonstrating a pattern of fraudulent conduct to support Plaintiff's RICO Claim." *Id.* at p. 8. Plaintiff argued, even if his demands were inadequate, he demonstrates the futility of making a demand based on alleged conflicts of interest of the OC and OCA boards. *Id.* at pp. 12-13.

## APPLICABLE LAW

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Oakland County Employees' Ret. Sys. v. Massaro*, 772 F. Supp. 2d 973, 976 (N.D. Ill. 2011) (internal quotation marks omitted).

Defendants make numerous, independent arguments as to why Plaintiff does not satisfy Fed. R. Civ. P. 23.1. The pertinent sections are as follows:

> (a) Prerequisites. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.
>
> (b) Pleading Requirements. The complaint must be verified and must:
>
> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1. "The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted). "Thus, the demand requirement implements the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders." *Id.* at 101 (internal quotation marks omitted).

## DISCUSSION

Defendants argue Plaintiff fails to satisfy Rule 23.1(a) because (1) OC and OCA are enforcing their rights, such that Plaintiff does not "bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce", and (2) Plaintiff "does not fairly and adequately represent the interests of shareholders or members who are similarly situated" because he is only a social member and not a golf member. They argue Plaintiff fails to satisfy Rule 23.1(b) because he does not state with particularity "any effort by the plaintiff to obtain the desired action from the corporation" and "the reasons for . . . not making the effort."

In researching and reading law to address the issues raised, I did not come across another case factually on point, specifically one in which the corporation was pursuing litigation arising out of the same events giving rise to the derivative action but the derivative plaintiff wanted the corporation to pursue additional remedies.

## I.    RULE 23.1 DERIVATIVE ACTION

### A.    *Whether Plaintiff brings a derivative action to enforce a right that OC and OCA may properly assert but have failed to enforce*

OC and OCA filed separate actions against many of the same Defendants named in this derivative action. Any rights OC and OCA already seek to enforce in the separate actions are not properly brought in this case because there has been no "fail[ure] to enforce" as required by Rule 23.1(a). Therefore, it is necessary to compare Plaintiff's causes of action with those brought in the separate OC and OCA actions.

Plaintiff's first cause of action is for breach of fiduciary duty against all Defendants. (ECF # 52 pp. 52-54). Plaintiff's allegations are almost verbatim those alleged by OC (ECF # 70 in 9:17-cv-00452, ¶¶ 33-38). OC also asserts a counterclaim for breach of fiduciary duty in the Selby state court action. (ECF # 20-2 p. 17). OCA asserts causes of action for breach of fiduciary duty (ECF # 9 in 9:17-cv-00794, ¶¶ 62-70). A comparison of the allegations shows the only breach Plaintiff alleges in this action that is not already asserted by OC and OCA is the allegation that Defendants breached a fiduciary duty by "Transferring assets to BEP and permitting a waiver of dues." (ECF # 52 ¶ 163.g). Therefore, I recommend dismissal of the breach of fiduciary duty claim, except as to paragraph 163.g, because OC and OCA are already enforcing the rights asserted in the other allegations.

Plaintiff's second cause of action is for negligence and negligent misrepresentation against all Defendants. (ECF # 52 pp. 54-55). Plaintiff's allegations are almost verbatim those alleged by OC (ECF # 70 in 9:17-cv-00452, ¶¶ 39-42). OC also asserts a negligence counterclaim in the Selby action. (ECF # 20-2 p. 23). OCA asserts a negligent misrepresentation action (ECF # 9 in 9:17-cv-00794, ¶¶ 89-96). A comparison of the allegations shows they are the same. Therefore, I recommend dismissal of the second cause of action because OC and OCA are already enforcing the rights asserted.

Plaintiff's third cause of action is for breach of contract against TI Oldfield. (ECF # 52 pp. 55-56). Plaintiff's allegations are almost verbatim those alleged by OC (ECF # 70 in 9:17-cv-00794, ¶¶ 43-46). While OCA does not assert breach of contract, I believe that OC's assertion of the rights and request for relief is sufficient. Therefore, I recommend dismissal of the third cause of action because OC is already enforcing the rights asserted.

Plaintiff's fourth cause of action is for tortious interference with contractual relations against TI Oldfield and Phillip Galbreath regarding the sale of the Greeters Store. (ECF # 52 pp. 56-57). Plaintiff's allegations are almost verbatim those alleged by OC (ECF # 70 in 9:17-cv-00452, ¶¶ 47-54). OCA also asserts causes of action related to the sale of the Greeters Store for interference with prospective contractual relations against Selby and Elliot Group Holdings, and for tortious interference with contractual relations against TI Oldfield, the directors TI Oldfield and BEP appointed to the OCA board, and Oldfield Holdings. (ECF # 9 in 9:17-cv-00794, ¶¶ 75-82). A comparison of the allegations shows they are the same. Therefore, I recommend dismissal of the fourth cause of action.

Plaintiff's fifth cause of action is for civil conspiracy and declaratory relief and indemnification against all Defendants and relates to the Greeters Store. (ECF # 52 pp. 57-59). Plaintiff's allegations are taken almost verbatim from OC and OCA's causes of action for civil conspiracy and declaratory relief (ECF # 70 in 9:17-cv-00452, ¶¶ 55-60; ECF # 9 in 9:17-cv-00794, ¶¶ 83-88). The only difference is that Plaintiff also seeks indemnification for any liability and the costs of defending Selby's employment action against OC. (ECF # 52 ¶¶ 189-90). OC seeks damage for the defense of Selby's lawsuit in its action for tortious interference with contractual relations (ECF # 70 in 9:17-cv-00452, ¶ 54) and seeks attorney's fees and costs in its counterclaims and third-party claims in the Selby lawsuit (ECF # 20-2 pp. 20, 26). However, it

does not seek indemnification for liability. Therefore, I recommend dismissal of the fifth cause of action, except as to indemnification for liability, because OC and OCA are already enforcing the rights asserted.[4]

Plaintiff's sixth cause of action against all Defendants is for quantum meruit as to confidential information about the Greeters Store, rescission of the Greeters Store sale and specific performance for its return, rescission of turnover, and quantum meruit as to the dues BEP did not pay for the lots it purchased. (ECF # 52 pp. 59-60). The allegations for quantum meruit as to confidential information about the Greeters Store are the same as those alleged by OC in its action (ECF # 70 in 9:17-cv-00452, ¶¶ 62-64) and in the Selby lawsuit by way of an unjust enrichment counterclaim and third-party claim (ECF # 20-2 p. 25). As to rescission of the Greeters Store sale, while neither OC nor OCA pled a rescission cause of action, OC requests a declaratory judgment that the sale should be voided and clear title should be conveyed to OC. *Id.* at ¶¶ 71-72. Therefore, I recommend dismissal of those portions of the sixth cause of action (ECF # 52 ¶¶ 193-196) because OC is already enforcing the rights asserted. Neither OC nor OCA seeks to enforce rights asserted in the remaining allegations as to rescission of turnover and quantum meruit for the dues BEP did not pay on its lots. Therefore, I do not recommend dismissal of those allegations under Rule 23.1(a).

Plaintiff's seventh cause of action is for preliminary injunction and declaratory judgment against all Defendants. (ECF # 52 pp. 60-61). The allegations are almost verbatim from OC and OCA's preliminary injunction and declaratory judgment causes of action (ECF # 70 in 9:17-cv-00452, ¶¶ 65-71; ECF # 9 in 9:17-cv-00794, ¶¶ 102-04, 106-07). The only slightly different

---

[4] Even if the Court disagrees that the action is duplicative, it should be dismissed as to BEP because Plaintiff agreed to dismiss civil conspiracy as to BEP in his response in opposition to the motions to dismiss (ECF # 65 p. 8 n.11) and at the hearing.

allegation by Plaintiff is a request to enjoin TI Oldfield from transferring real property, non-cash assets, and cash. (ECF # 52 ¶ 208).  However, OCA alleges TI Oldfield is attempting to divest itself of assets and asks for a preliminary injunction prohibiting it "from divesting [itself] of assets in an attempt to become judgment-proof." (ECF # 9 in 9:17-cv-00794 ¶ 106 and "Wherefore" paragraph).  Therefore, I recommend dismissal of the seventh cause of action because OC and OCA are already enforcing the rights asserted.

Plaintiff's eighth through seventeenth causes of action are not asserted in the OC and OCA actions and, as such, are not subject to dismissal under Rule 23.1(a).  These recommendations for dismissal based on Rule 23.1(a) are generally consistent with Plaintiff's representations at the hearing that he seeks the following relief that is not sought by OC or OCA: rescission of turnover, damages from post-turnover conduct, dues BEP did not pay for the lots it purchased, appointment of a receiver, indemnification for the Selby lawsuit, modification of the governing documents and OC Declaration and Transfer Agreement, theft of services, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

I disagree with Plaintiff's argument that he must assert any duplicative causes of action to support a RICO action. (ECF # 65 p. 8).  "An act of racketeering under RICO commonly is referred to as a predicate act.  A pattern of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts." *Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012) (internal quotation marks and citation omitted).  "Under [18 U.S.C.] § 1961(5), a plaintiff must, at a minimum, allege two acts of racketeering to plead a 'pattern of racketeering activity.'  This requirement is commonly known as the predicate act requirement; that is, the plaintiff must allege at least two predicate acts to form a RICO claim." *Int'l Data Bank v. Zepkin*, 812 F.2d 149, 151 (4th Cir. 1987).  I am unaware of a requirement that the predicate acts are stated as independent

causes of action, and Plaintiff could not cite any such law at the hearing.  Therefore, I recommend rejection of this argument as a basis to assert duplicative claims.

### B.  Whether Plaintiff Pled Futility with Particularity

Under Rule 23.1(b)(3)(B), failure to make a demand is excused if a plaintiff states "with particularity: . . . the reasons for . . . not making the effort", which is referred to as showing a demand would have been futile.  Because a futility finding negates the need to make a demand, I address futility prior to discussing whether Plaintiff made and pled sufficient demands as to the remaining causes of action. *See Wencoast Rests., Inc. v. Chart Capital Partners, L.P.*, 2006 WL 490101, *8-10 (D.S.C. Feb. 28, 2006) (addressing only futility argument where defendants argued failure to adequately plead demand and futility); *Carolina First Corp. v. Whittle*, 343 S.C. 176, 191-92, 539 S.E.2d 402, 410-11 (Ct. App. 2000) (permitting a derivative plaintiff to argue both that he made a demand and that a demand would be futile).

"Rule 23.1 only requires that plaintiff allege with particularity . . . their reasons for not making a demand." *Wencoast*, 2006 WL 490101, *7 (internal quotation marks omitted).  "'In evaluating the "excuse" allegations in derivative suits, courts have generally been lenient in excusing demand.'" *Id.* at *8 n.3 (quoting *Grant v. Gosnell*, 266 S.C. 372, 376, 223 S.E.2d 413 (1976)).  However, "[t]his standard does not mean a court will be lenient in finding there are sufficient facts pled to establish futility.  Rather, it means that if the court finds sufficient facts are pled, then it will be lenient in excusing demand--a matter within its discretion." *Carolina First*, 343 S.C. at 192, 539 S.E.2d at 411 (internal quotation marks omitted).  "Thus, Shareholders still ha[ve] the burden of alleging particularized facts to support the assertion that demand would have been futile." *Id.*

In the part of the Amended Complaint addressing the Rule 23.1 pleading requirements, Plaintiff mentions futility only in quoting the law, but does not make an allegation of futility in this case. *Id.* at ¶¶ 53-68. Plaintiff alleges the OC and OCA boards of directors are conflicted from bringing this action but does not say that makes a demand futile. (ECF # 52 ¶¶ 31, 67, 70, 152, 153.c.).  I recommend finding Plaintiff failed to meet his burden of alleging particularized facts of futility.   However, even assuming the Court found sufficiently particularized allegations, I recommend finding they do not substantively establish futility.

Plaintiff alleges that (1) TI Oldfield controlled and dominated, and continues to control and dominate, the boards and (2) the boards' failure to pursue the remedies he asserts in this action render them incompetent to bring the action.[5] (ECF # 52 ¶¶ 30-31, 67, 70, 152, 153.c.).  It is undisputed that, as of turnover at the end of 2015, the OC and OCA boards have a majority of members elected by the community. *Id.* at ¶¶ 89, 92.  Plaintiff alleges that, despite this fact, "the SF Companies [TI Oldfield] still dominated the Oldfield Boards via the TI and BEP directors and the provisions in the Turnover Agreement that provide extraordinary post turnover veto power outlined in the Turnover Agreement." *Id.* at ¶ 92.  However, there is no explanation of how the alleged veto power works and what actions it may apply to, such that I am unable to determine if it results in TI Oldfield actually controlling OC and OCA. actions.  The only named defendant who was a board member at the time of filing is Phillip Galbreath, who is the member of the OC and OCA boards appointed by TI Oldfield. (ECF # 36-8 p. 2).  Plaintiff alleges Galbreath is "a

---

[5] Plaintiff argues in his opposition to the motions to dismiss that futility is shown because "there are common directors of OCA, OC and the" Oldfield Community Council, the OC and OCA directors would be investigating their own wrongdoing, TI Oldfield "admitted" it dominated the OC and OCA boards after turnover, and based on the allegations of wrongdoing in the Amended Complaint. (ECF # 65 pp. 12-13).  However, those allegations are not made in the Amended Complaint as a basis for futility.  Therefore, I do not consider them.

principle in one or more of the SF Companies" but does not allege he personally benefitted from any alleged wrongful conduct. (ECF # 52 ¶ 12).

To bring a derivative action, the plaintiff "must show that he has endeavored to get redress of his grievances within the corporation, or he must show facts which would justify a court in concluding that an effort for redress within the corporation would be unavailing." *Thompson v. Thompson*, 214 S.C. 61, 69-70, 51 S.E.2d 169, 173 (1948).

> [A]n application for redress within the corporation and refusal need not be alleged, if it be shown that the directors or managing board are themselves the wrongdoers in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock, so as to control corporate action. In such a case it is reasonable to infer that an effort for redress within the corporation would be unavailing.

*Grant v. Gosnell*, 266 S.C. 372, 374, 223 S.E.2d 413, 414 (1976). In *Grant*, the plaintiff stockholder brought a derivative action against a bank "based on allegations of fraud and mismanagement in connection with the operation of" the bank and named numerous directors as defendants. *Id.* at 373, 223 S.E.2d at 413. Gosnell, the only defendant who was still a director at the time of filing, "was chairman of the board, chief executive officer, and majority stockholder." *Id.* at 375-76, 223 S.E.2d at 414. The court held, because "Gosnell was chairman of the board of directors, and the owner of a majority of [the bank]'s stock at the time this suit was brought", "it is reasonable to infer that Gosnell would not voluntarily permit corporate action designed to grant relief for the grievances alleged in the complaint in which he is named as a wrongdoer." *Id.*

In this case, unlike in *Grant*, I do not believe it is reasonable to infer OC and OCA would not permit action seeking relief for the grievances alleged in the Amended Complaint. Rather, the opposite occurred. The boards ***are*** seeking relief against the very parties Plaintiff alleges controls them—TI Oldfield through Phillip Galbreath. This shows TI Oldfield does not control the boards because it was unable to prevent them from suing it. Further, that the only allegedly biased or

15

conflicted director on either board, Mr. Galbreath, is named as a defendant in the OC and OCA actions demonstrates his presence on the boards did not (and would not) prevent him from being named as a defendant or prevent the pursuit of relief from TI Oldfield.  That Plaintiff may disagree with the specific remedies the boards chose to seek relief does not show futility.  Plaintiff simply fails to allege any express or particularized facts of futility but makes only conclusory allegations that TI Oldfield controls the boards. *See Carolina First*, 343 S.C. at 194, 539 S.E.2d at 412 (holding the assertion that defendants "controlled the board, is a conclusory allegation, and there are not particularized facts in support of this conclusion").  I recommend finding Plaintiff failed to particularly allege futility and the allegations made do not establish futility.[6]

### C.   Whether Plaintiff Pled the Demand requirements with Particularity

As to the allegations remaining in Plaintiff's Amended Complaint, I now address whether Plaintiff satisfies the pleading requirements of Fed. R. Civ. P. 23.1(b).  The remaining allegations are breach of a fiduciary duty by transferring assets to BEP that permitted a waiver of dues, indemnification for liability of the Selby lawsuit, rescission of turnover and quantum meruit for the dues BEP did not pay on its lots, and causes of action eight through seventeen.  Defendants dispute Plaintiff's satisfaction of only subsection (b)(3), which requires the complaint "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or

---

[6] Plaintiff cites in his memorandum in opposition, and argued at the hearing, for application of futility tests under Delaware law that this Court previously cited. *In re World Acceptance Corp. Derivative Litig.*, 2017 WL 770539, **19-21 (D.S.C. Feb. 28, 2017) (citing the "*Rales* Test" and the "*Aronson* Test").  I do not believe application of those tests is mandated for a futility determination but, regardless, I would still find Plaintiff fails to satisfies them because he does not allege any personal benefit or personal liability of a director under the *Rales* test and does not allege particularized facts to create a reasonable doubt that a majority of directors (or any director) is disinterested and independent or any challenged transaction was not the product of presumed business judgment.

comparable authority . . . ; and (B) the reasons for not obtaining the action." Fed. R. Civ. P. 23.1(b)(3)(A)-(B).

After Defendants filed the initial motions to dismiss, Plaintiff filed an Amended Complaint that included 409 pages of exhibits intended to show demands made on OC and OCA. (ECF # 52 ¶ 59). Plaintiff separates the exhibits into documents purportedly showing demands he made and those made by Robert Weinfeld, a non-party who is a resident of Oldfield. *Id.* I read all of the 409 pages filed by Plaintiff and do not find that they show a demand made as to all of the actions sought in the Amended Complaint. The exhibits include email chains, monthly President's Letters from OC and OCA board presidents, board meeting minutes, and financial statements. They mostly consist of questions, concerns, and discussions about various issues at Oldfield and ask for information but do not contain an actual "effort by the plaintiff to obtain the desired action" from the boards. Fed. R. Civ. P. 23.1(b)(3)(A).

"Rule 23.1 only requires that plaintiff allege with particularity the demands they have made, if any, or their reasons for not making a demand." *Wencoast Rests., Inc. v. Chart Capital Partners, L.P.*, 2006 WL 490101, *7 (D.S.C. Feb. 28, 2006) (internal quotation marks omitted). "[W]hether the demand and/or excuse was stated with particularity - is a federal procedural question." *Id.* at *7-8. "In evaluating a derivative claim brought in federal court, the court must determine the adequacy of pleading under federal law, but must apply the substantive law of the state of incorporation to determine the sufficiency of a pre-suit demand." *Patz v. Util. Software of Am., Inc.*, 2012 WL 443929, *5 (D.S.C. Feb. 10, 2012). "Under South Carolina law, '[a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. Such a pre-suit demand must be alleged, not in a conclusory fashion, but through particularized allegations.'" *Id.*

at *5-6 (quoting *Carolina First Corp. v. Whittle*, 343 S.C. 176, 189, 539 S.E.2d 402, 409-10 (Ct. App. 2000)).  Based on this criteria, I analyze whether Plaintiff made and pled sufficient demands.

### i.     Demand for Action as to Breach of Fiduciary Duty and Quantum Meruit for TI Oldfield's Transfer of Lots to BEP that Permitted a Waiver of Dues

I address the breach of fiduciary duty and quantum meruit allegations together because they address the same wrong and seek the same relief.  Plaintiff alleges:

> [R]epeated demands have been made by the Derivative Plaintiff and other OC and OCA members . . . to sue the SF Companies and BEP for fraud and other claims in connection with the sale of Oldfield lots by TI to BEP and the resulting failure of BEP to pay any social membership fees to the OC since the 2013 sale . . .

> Such Demands by the Derivative Plaintiff include, but are not limited to, the documents [attached as exhibits to the Amended Complaint].

> Further demand was made by the Derivative Plaintiff on the OC and OCA Boards to: . . . seek recovery of BEP (and from TI [Oldfield], in the alternative) waived fees and dues from 2013 through 2018 . . . by way of the Derivative Plaintiff's repeated request to intervene in the pending OC and OCA Actions before this Court, by the filing of a Motion to Intervene with a proposed complaint reflecting the additional demands by the Derivative Plaintiff.

(ECF # 52 ¶¶ 58-60).  These demand allegations identify the alleged wrongdoers (TI Oldfield and BEP), describe the factual basis of the wrongful acts and the harm caused (selling lots but waiving obligation to pay dues on them), and request remedial relief (recovery of the unpaid dues). *Id.* at ¶¶ 49, 58-59, 61.  Therefore, Plaintiff's pleading of this effort "to obtain the desired action from the directors" of OC and OCA satisfies Rule 23.1(b)(3)(A) as to breach of fiduciary duty and quantum meruit actions against TI Oldfield and BEP, and their respective directors.  I recommend dismissing the breach of fiduciary duty and quantum meruit allegations against the remaining Defendants as Plaintiff does not allege he demanded OC and OCA pursue any relief against them related to the unpaid dues.

In making this recommendation, I do not consider the allegations in paragraph 60 of the Amended Complaint that Plaintiff made certain demands "by way of" his motion to intervene in

the OC and OCA actions. Plaintiff's motion to intervene, filed after OC and OCA filed their actions, is not a demand under Rule 23.1. *See Wencoast Rests.*, 2006 WL 490101, *9 ("Since the rule's demand requirement is designed to give the directors an opportunity to take the action requested by the shareholder prior to suit, a post-suit demand likely would not suffice. Accordingly, most of the evidence of Criss's post-suit demands [through counsel and court proceedings] is irrelevant."); *In re Sapient Corp. Derivative Litig.*, 555 F. Supp. 2d 259, 263 (D. Mass. 2008) ("[A] shareholder demand must be made of appropriate corporate authorities before bringing suit, absent extraordinary circumstances that justify a failure to do so. A post-suit demand simply does not meet the Rule's procedural prerequisite."). Considering a motion to intervene in the corporation's litigation to serve as a Rule 23.1 demand would defeat "the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders" by permitting a potential derivative plaintiff to insert his or her demands into ongoing litigation rather than first giving the corporation the option of asserting the right itself. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 101 (1991). Therefore, the allegations in paragraph 60 are not considered a demand as to any action discussed herein.

### ii. Demand for Action as to Indemnification for Liability of the Selby Lawsuit

Plaintiff does not allege that he demanded OC[7] seek indemnification of liability by TI Oldfield for the Selby state court lawsuit. The exhibits include a December 12, 2016 email from Plaintiff to Jay Barr, president of the OC board of directors. It states: "I have to commend the Board on taking a firm stance with Selby. I do have a couple of questions: . . . Why didn't you Cross Claim TI to indemnify the Club of this legal claim as they are the creator of the employment

---

[7] OCA is not a party to the Selby state court action.

agreement and the other party in the civil conspiracy?" (ECF # 52-12 pp. 2-3). At the end of the email, Plaintiff wrote: "I and many others believe time is of the essence for this Board to file all claims against TI." *Id.* at p. 3. Mr. Barr responded: "Cross-claim for indemnity: this question does not make sense to our counsel from a legal standpoint overall, the decision was made not to bring TI in at this time." *Id.* at p. 2.

I find this email is not a sufficient demand. It does not demand OC take any action but rather asks why it has already not done so. I recognize the end of the email says Plaintiff "believe[s]" the Board should file all claims against TI, but I do not believe it can reasonably be interpreted "to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen*, 500 U.S. at 96 (internal quotation marks omitted). Therefore, I recommend dismissing the indemnification of liability sought in Plaintiff's fifth cause of action.

### iii.     Demand for Action as to Rescission of Turnover

Plaintiff does not allege that he demanded OC or OCA seek rescission of turnover. The exhibits do not contain a demand by Plaintiff that OC or OCA seek rescission of turnover. The only possible reference to rescission I found is a December 15, 2016 email from non-party Steven Goldberg (apparently a resident of Oldfield) to numerous people, including the presidents of the OC and OCA boards, asking "Why won't you discuss rolling back turnover?". (ECF # 52-21 pp. 15-16). Even assuming a demand from someone who is not the named Plaintiff in a derivative action could satisfy Rule 23.1, this is not a sufficient demand because it asks a question rather than asking either board to take action. Therefore, I recommend dismissing the rescission of turnover allegations in the sixth cause of action.

### iv.    Demand for Action for RICO Claim

Plaintiff's only allegation as to a RICO claim is that he demanded it by way of his motion to intervene. (ECF # 52 ¶ 60).  This is insufficient under Rule 23.1 for the reasons stated above. The exhibits contain a reference to the RICO claim in OC board meeting minutes of June 23, 2017.

> Star wants to bring an additional case because they [Star and other members] are alleging that TI has demonstrated a pattern of fraud and self-dealing going back 10 years including illusory contracts, unilateral modifications to the documents, and they are alleging that the Bald Eagle transactions are a sham.
>
> They will likely file a RICO claim alleging semi-criminal actions and they are saying that the pre and post boards are complicit in those actions. . . .
>
> The result of this for Oldfield, will be higher legal fees, and likely a longer period of time to settle the issues with TI.

(ECF # 52-17 pp. 8-9).  While this appears to identify the alleged wrongdoer as TI Oldfield and specifically references a RICO claim, I still believe it fails to satisfy the particularity requirements because it does not state the factual basis of any wrongful acts or the harm caused to OC. *Carolina First*, 343 S.C. at 189, 539 S.E.2d at 409-10; *see also Patz v. Util. Software of Am., Inc.*, 2012 WL 443929, *7 (D.S.C. Feb. 13, 2012) (finding a demand insufficient where plaintiff did "not identify [certain defendants] as the alleged wrongdoers, describe any wrongful acts by [those defendants], or indicate what actions Plaintiff wanted the corporation to take to redress the alleged wrongful conduct").  Further, this information appears only in OC board minutes and, therefore, could not support a RICO action brought by OCA.  I recommend dismissing the RICO cause of action.[8]

### v.    Demand for Action as to Modification of Unconscionable/Illusory Contracts/Oppressed Shareholders

---

[8] The heading of the RICO claim does not specify which Defendants Plaintiff asserts it against. Even if Plaintiff made and pled a demand in compliance with Rule 23.1, I would still recommend dismissal of the claim as to all entities except the TI Oldfield entities because, at the hearing, Plaintiff stated the claim is intended to be solely against the TI Oldfield entities.

Plaintiff's ninth cause of action seeks modification of the governing documents and the OC Declaration and transfer agreement on the basis that they are contracts of adhesion and provide too much control over the OC and OCA boards to TI Oldfield and BEP, rendering OC and OCA members oppressed shareholders. (ECF # 52 ¶¶ 216-20). Plaintiff's only demand allegation as to this claim is that he demanded it by way of his motion to intervene. (ECF # 52 ¶ 60). This is insufficient for the reasons stated above. The exhibits may contain a reference to this claim in OC board meeting minutes of June 23, 2017.

> Star wants to bring an additional case because they [Star and other members] are alleging that TI has demonstrated a pattern of fraud and self-dealing going back 10 years including illusory contracts, unilateral modifications to the documents, and they are alleging that the Bald Eagle transactions are a sham.

(ECF # 52-17 pp. 8-9). It is unclear if the reference to "illusory contracts" refers to the documents Plaintiff seeks to modify. Further, it does not ask the OC board to seek modification of anything. Therefore, I recommend dismissing the ninth cause of action.

### vi.    Demand for Action as to Ultra Vires Conduct

Plaintiff's tenth cause of action seeks damages from various acts of ultra vires conduct of the director Defendants. (ECF # 52 p. 63). Plaintiff alleges "repeated demands have been made by the Derivative Plaintiff and other OC and OCA members . . . to pursue certain present and former board members arising from ultra vires acts." *Id.* at ¶ 58. This is not a sufficiently particularized allegation of a demand because it does not describe the factual basis of the wrongful acts, harm to the corporation, or relief sought. *See Patz v. Util. Software of Am., Inc.*, 2012 WL 443929, *5-6 (D.S.C. Feb. 10, 2012) ("Under South Carolina law, [a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. Such a pre-suit demand must be alleged, not in a conclusory fashion, but through particularized allegations." (internal quotation marks omitted)).

22

An exhibit relates to one allegation of ultra vires conduct—"OC's improper application of member dues to golf facilities." (ECF # 52 ¶ 222). On September 3, 2014, Plaintiff sent an email to Jay Barr as "president of the OCC" that states: "What is your position on the transfer of dues to Golf when the golf course is profitable? That is the 'Club' money and the other entity, that does not pay any G&A overhead, is showing a profit. . . . I am asking you and the OCC to go to TI and ask them to put those funds back into the Club." (ECF # 52-7 p. 4; 52-8 pp. 1-4). While this email may substantively constitute a demand, it is made to the Oldfield Community Council and not to OC or OCA. Therefore, it does not satisfy Rule 23.1(b)(3), and I recommend dismissing the tenth cause of action.

### vii.     Demand for Action as to Conflicts of Interest

Plaintiff's eleventh cause of action is for conflicts of interest against all Defendants and asserts the directors of OC, OCA, and TI Oldfield engaged in conflicts of interest in violation of S.C. Code Ann. § 33-31-831. Plaintiff does not allege that he demanded OC or OCA pursue conflict of interest claims. One of the conflicts alleged is the assessment of "OC Equity Golf Members for Club Facility repairs to be paid by TI." (ECF # 52 ¶ 229). At the hearing, we discussed a July 11, 2017 letter from Plaintiff's counsel to the OC board of directors specifically objecting to the assessment and demanding the board withdraw it or the members would add it to the claims in the proposed intervenor complaint. (ECF # 52-18 pp. 1-3). Plaintiff references the letter in the Amended Complaint. (ECF # 52 ¶ 66). However, counsel for Plaintiff stated at the hearing that she did not intend this letter to serve as a Rule 23.1 demand but, rather, as an effort to avoid the voluntary payment doctrine defense. Therefore, I find there is no demand and recommend dismissing the eleventh cause of action.

### viii.     Demand for Action as to Improper and Undisclosed Bylaws Amendment

Plaintiff's twelfth cause of action is for improper and undisclosed amendment of bylaws under S.C. Code Ann. § 33-31-1021 against all director Defendants. (ECF # 52 p. 65). It relates to a 2013 amendment passed by OC and alleges the board passed it without notice or an opportunity for the members to vote on it. *Id.* at ¶¶ 233-34. Plaintiff does not allege that he demanded OC or OCA take any action related to the amendment. There is a November 19, 2016 email from Plaintiff to the OC board president asking for a copy of the amendment. (ECF # 52-25 p. 20). However, this is a request for information and not a demand to obtain any action from OC. The June 23, 2017 OC board meeting minutes state "Star wants to bring an additional case because they [Star and other members] are alleging that TI has demonstrated a pattern of fraud and self-dealing going back 10 years including . . . unilateral modifications to the documents . . . . (ECF # 52-17 pp. 8-9). It is unclear if "unilateral modifications" refers to the 2013 amendment. Further, it does not ask OC to rescind or produce an amendment—the relief apparently sought in this cause of action. Therefore, I recommend dismissing the twelfth cause of action.

### ix.    Demand for Action as to Failure to Properly Maintain and Produce Records for Inspection

Plaintiff's thirteenth cause of action is against all Defendants for failure to properly maintain and produce records for inspection. (ECF # 52 ¶¶ 237-38). It relates to financial documents and the 2013 amendment. *Id.* at ¶ 238. Plaintiff alleges "repeated demands have been made by the Derivative Plaintiff and other OC and OCA members to obtain accurate accounting of utilization of funds by and between OC and OCA . . . ." *Id.* at ¶ 58. This identifies the alleged wrongdoers as OC and OCA, and describes the factual basis of the wrongful acts as failing to provide an accurate accounting, but does not state harm caused to OC or OCA from not providing an accurate accounting. *See Patz*, 2012 WL 443929, *5-6 ("Under South Carolina law, [a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the

wrongful acts and ***the harm caused to the corporation***, and request remedial relief." (internal

quotation marks omitted) (emphasis added)).  Therefore, I recommend dismissing the thirteenth

cause of action.

### x. Demand for Action as to Failure to Report OC and OCA's Lawsuits to the South Carolina Attorney General

Plaintiff's fourteenth cause of action is against all Defendants for the alleged failure to

report OC and OCA's actions to the South Carolina Attorney General pursuant to S.C. Code Ann.

§§ 33-31-170 to -171.  Plaintiff does not allege in the Amended Complaint that he demanded OC

or OCA report their actions to the Attorney General.  The exhibits also do not reference the

Attorney General.  Therefore, Plaintiff failed to plead he made a demand, and I recommend

dismissing the fourteenth cause of action.

### xi. Demand for Action as to Appointment of Receiver

Plaintiff's fifteenth cause of action seeks the appointment of a receiver to "engage in

oversight" of BEP and TI Oldfield's "financial dealings" and of OC and OCA's boards of directors

to ensure accurate accounting, retention of assets, and credible reports of Oldfield's operations.

(ECF # 52 ¶ 244).  The only allegation of a demand for appointment of a receiver is one made "by

way of" Plaintiff's motion to intervene, which is insufficient for the reasons stated above. (ECF #

52 ¶ 60).  There is no demand for appointment of a receiver in the exhibits.  Therefore, recommend

dismissing the fifteenth cause of action.

### xii. Demand for Action as to Violation of U.S. Title XIV Due to a Deceptive and Inaccurate Property Report

Plaintiff's sixteenth cause of action is against TI Oldfield for violation of Title XIV based

on an allegedly deceptive and inaccurate federally mandated property report filed by TI Oldfield.

(ECF # 52 ¶¶ 246-250).  The only allegation of a demand for a Title XIV claim is one made "by

way of" Plaintiff's motion to intervene, which is insufficient for the reasons stated above. *Id.* at ¶

60.  There is no demand for appointment of a receiver in the exhibits.  A November 22, 2016 email from Rob Weinfeld to numerous people, including the OC and OCA board presidents, states "The Board(s) should also pursue the issue of possible fraud on the 'HUD' statement . . . ." (ECF # 52-22 p. 27).  Even assuming this refers to the Title XIV property report and that a demand from someone who is not the named Plaintiff in a derivative action could satisfy Rule 23.1, I would find this does not satisfy the particularity requirements.  The email does not actually ask for legal action to be taken but says the boards "should" pursue an "issue".  *See Smachlo v. Birkelo*, 576 F. Supp. 1439, 1443 (D. Del. 1983) ("The demand itself must be more than pro forma; the plaintiff must make a serious request upon the board and specify the nature of the activity in question.").  Therefore, I recommend dismissing the sixteenth cause of action.

### xiii.    Demand for Action as to Theft of Services

Plaintiff's seventeenth cause of action is against TI Oldfield for theft of services. (ECF # 52 ¶¶ 253-56).  It relates to revenue generated by non-member use of the facilities for weddings and golf, and the allegation that TI Oldfield used the revenue to breakeven on operational funds and offset its obligation to pay deficits. *Id.* at ¶ 254.  Plaintiff alleges the revenue should have gone to OC and OCA. *Id.* at ¶ 256.  Plaintiff does not allege he demanded OC or OCA take any action for theft of services.  Two exhibits reference a claim for theft of services.  Both communications are made by non-plaintiffs.

On December 15, 2016, Steven Goldberg sent an email to numerous people, including the OC and OCA board presidents, stating the revenue generated from public use of the club's facilities "is illegal" and "TI [Oldfield] owes the community all the money, going back years, as it is theft of services and may in fact be criminal." (ECF # 52-21 p. 16).  Even assuming a demand from someone who is not the named Plaintiff in a derivative action could satisfy Rule 23.1, I find this

email does not serve the purposes of the demand requirement "to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right" but, rather, is the communication of a member's opinion on an issue. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted).

On August 27, 2017, Rob Weinfeld sent an email to members of the OC and OCA boards stating he viewed "TI [Oldfield's] use of the profits from weddings, etc as theft of services . . . and the attorneys need to subpoena documents to get an accounting of those revenues and use, and if used by TI to pay off TI's obligation to fund short falls, go after these monies as a separate claim and amend the current Complaint." (ECF # 52-24 p. 5).  This identifies the alleged wrongdoer as TI Oldfield, describes the factual basis of the wrongful acts as public use of club facilities for weddings, describes the harm to the corporation as loss of the profits from those weddings used to decrease TI Oldfield's obligation to fund short falls, and requests remedial relief in the form of a claim for theft of services.  While I would find this is a substantively adequate demand, it is made by someone who is not the named derivative plaintiff.  I recommend finding a demand made by someone who is not a named derivative plaintiff cannot be used to satisfy Rule 23.1.  Plaintiff argued at the hearing that a demand made by any OC or OCA member could satisfy Rule 23.1.  I disagree.

The rule refers to "the plaintiff" in three requirements.  First, it states "the plaintiff" must fairly and adequately represent the interests of the shareholders. Fed. R. Civ. P. 23.1(a).  This requirement would be meaningless if "the plaintiff" meant every member because a plaintiff would always fairly and adequately represent the shareholders if he or she was considered the equivalent of all shareholders.  Second, the rule states "the plaintiff" must allege he was a shareholder at the

time of the transaction about which he complains. Fed. R. Civ. P. 23.1(b)(1). This requirement would also be meaningless if "the plaintiff" meant every member because it would always be satisfied. Third, the rule states "the plaintiff" must make the demand. Fed. R. Civ. P. 23.1(b)(3)(A). The only reasonable interpretation of the rule is that "the plaintiff" refers to the named derivative plaintiff (or plaintiffs). *See, e.g.*, *In re World Acceptance Corp. Derivative Litig.*, 2017 WL 770539, *18 (D.S.C. Feb. 28, 2017) ("[A]s a precondition for bringing a derivative action, ***the plaintiff*** must make a demand on the board . . . ." (internal quotation marks omitted) (emphasis added)); *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) ("Thus, in the usual case, ***a shareholder*** seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." (internal quotation marks omitted) (emphasis added)). Plaintiff provided no law to support his position. I recommend finding a demand made by a non-plaintiff cannot satisfy Rule 23.1 and, therefore, recommend dismissing the seventeenth cause of action.

### D. Conclusion as to Rule 23.1

The above analysis makes it unnecessary to rule on Defendants' additional arguments as to whether Plaintiff is similarly situated to or fairly and adequately represents the interests of other members. It also makes it unnecessary to rule on Oldfield Community Council, Jay Barr, and Richard Price's arguments under Fed. R. Civ. P. 12(b)(6) because there are no remaining allegations against them. In sum, the only allegations as to which I would find Plaintiff satisfied Rule 23.1 are breach of fiduciary duty and quantum meruit against TI Oldfield, BEP, and their respective directors seeking relief for the transfer of lots without the obligation to pay dues.

## II.    DERIVATIVE STANDING AS AN OPPRESSED SHAREHOLDER

Plaintiff alleges derivative standing on the alternative basis that he is an oppressed shareholder under S.C. Code Ann. § 33-18-400. (ECF # 52 ¶¶ 43-52).  However, that statute applies to a statutory close corporation, not to a non-profit such as OC and OCA. S.C. Code Ann. § 33-18-400 ("[A] shareholder of a statutory close corporation may petition the circuit court for any of the relief described in . . . .").  "A statutory close corporation is a corporation whose articles of incorporation contain a statement that the corporation is a statutory close corporation." S.C. Code Ann. § 33-18-103(a).  Plaintiff makes no allegation that the OC or OCA articles of incorporation state either is a statutory close corporation.  Rather, he alleges both are non-profit organizations. (ECF # 52 ¶¶ 2, 4).  Therefore, this argument is inapplicable to the facts and does not provide derivative standing for any claim.  I recommend finding Plaintiff cannot pursue any claims as an oppressed shareholder under § 33-18-400.

## III.    BEP'S MOTION TO DISMISS

### A.  Breach of Fiduciary Duty

BEP argues that Plaintiff failed to properly plead breach of fiduciary duty under Fed. R. Civ. P. 12(b)(6). (ECF # 27 p. 2).  The only remaining breach of fiduciary duty allegations against BEP are for non-payment of dues.  Plaintiff alleges the transfer to BEP of only rights but no obligations pay OC dues "removed an estimated 20% of the lots from contributing dues to the OC" and resulted in an increase in dues paid by the members. (ECF # 52 ¶¶ 75, 85, 115).  Plaintiff does not specifically allege BEP owes OC or OCA a fiduciary duty. *Id.* at ¶¶ 159-64.  He alleges "the SF Companies owed, and owes, a fiduciary duty to OC and OCA" and the "John Doe Directors" of the OC and OCA boards "each owed a fiduciary duty to Oldfield." *Id.* at ¶¶ 160-61.  He alleges "All named Defendants and John Doe Directors breached their fiduciary duties to OC and OCA, including by: . . . Transferring assets to BEP and permitting a waiver of dues." *Id.* at ¶ 163.g.  BEP argues Plaintiff fails to allege facts showing the existence of a fiduciary relationship between BEP

and Plaintiff (members of OC and OCA) and there is no law finding a fiduciary duty is owed by a lot owner to a community association or its members. (ECF # 27 pp. 4-5).

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *Hartsock v. Am. Auto. Ins. Co.*, 788 F. Supp. 2d 447, 449 (D.S.C. 2011) (internal quotation marks omitted). "[U]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 724 (D.S.C. 2007) (internal quotation marks omitted). "The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged." *Id.* "When ruling on a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint." *Discover Bank v. Warren (In re Warren)*, 486 B.R. 704, 707 (D.S.C. 2013) (internal quotation marks omitted).

Accepting the factual allegations as true, Plaintiff establishes BEP purchased lots in a transaction that transferred declarant rights, including the right to appoint a director to the OCA board, but not the obligation to pay OC dues. Plaintiff establishes this transaction created a loss of dues income and ultimately resulted in an increase of OC dues paid by its members but not BEP. However, even accepting all of this, Plaintiff does not allege or show that BEP owes a duty to OC or OCA by virtue of its purchase of lots. I recognize that BEP is different from a mere lot owner because it obtained the right to appoint a director to the OCA board, but it is not clear how the ability to appoint a director results in the creation of a fiduciary duty or is related to the allegation that BEP should have paid dues. Further, BEP could appoint a director to OCA but did not pay dues to OC, and it is unclear how the appointment of a director to OCA could result in a breach of

fiduciary duty to pay dues to another entity. "To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing." *Moore v. Moore*, 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct. App. 2004). Plaintiff simply fails to allege BEP owed a fiduciary duty to OC or OCA related to payment of OC dues.

Plaintiff did not respond to BEP's argument in his memorandum in opposition to the motions to dismiss (ECF # 36, 65). At the hearing, Plaintiff responded by reading a letter from counsel for OC that stated the lot transfer raises questions as to whether the developer met its fiduciary duty—not whether BEP met a fiduciary duty. I recommend granting BEP's motion to dismiss the breach of fiduciary claim against it because I do not believe Plaintiff alleged, or the law supports, the existence of a fiduciary duty owed by BEP to OC or OCA related to payment of OC dues.

### B. Quantum Meruit

BEP argues Plaintiff failed to adequately plead a quantum meruit claim against it under Fed. R. Civ. P. 12(b)(6) because Plaintiff does not plead a benefit conferred upon BEP by OC or OCA but only one conferred by TI Oldfield. (ECF # 27 p. 7). Plaintiff alleges:

> BEP and SF Companies[TI Oldfield] received a benefit via the transfer of the BEP Lots to the disadvantage of the OCA and OC as a result of the BEP waiver of dues.

> It would be unjust for BEP and [TI Oldfield] to retain those benefits without paying their value including, but not limited to, the payment of all dues owed by BEP (or by the SF Companies due [to] their breach of the OC and OCA Declarations) pursuant to the express terms of the OCA and OC Declarations from BEP's purchase of the BEP Lots. Thus, full payment of all past dues must be remitted by TI and BEP.

(ECF # 52 ¶¶ 197-98). To prevail on a quantum meruit "theory, a plaintiff must show the following elements: (1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make

it inequitable for him to retain it without paying its value." *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 467, 684 S.E.2d 756, 764 (2009) (internal quotation marks omitted). BEP argues Plaintiff does not satisfy the first element—a benefit conferred by OC or OCA upon BEP. (ECF # 27 p. 7). After reviewing the allegations related to BEP's purchase of lots, I agree with BEP. (ECF # 52 ¶¶ 74-86, 197-98).

The alleged benefit is that BEP purchased lots from TI Oldfield under terms that did not require BEP to pay OC dues for those lots. As a result, Plaintiff alleges the members have carried a larger dues burden than necessary. *Id.* at ¶¶ 82, 85-86. "For restitution to be warranted, the plaintiff must confer the benefit nongratuitously: that is, it must either be (1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment." *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 296 S.C. 530, 532-33, 374 S.E.2d 507, 509 (Ct. App. 1988). Plaintiff does not allege OC or OCA had anything to do with the purchase transaction or that BEP requested anything from them. BEP entered into a transaction with TI Oldfield, not with OC or OCA. Plaintiff does not allege BEP did anything to cause OC to rely on it for payment of dues or induce OC into expecting payment of dues. *See id.* at 533, 374 S.E.2d at 509 (affirming judgment for the defendant as to quantum meruit where the subcontractor plaintiff entered into a contract with the sublesee, not with the property owner defendant).

Plaintiff did not respond to BEP's argument in his memorandum in opposition to the motions to dismiss (ECF # 36, 65). At the hearing, Plaintiff responded by reading a letter from counsel for OC that discusses the economic implications for the removal of these lots from paying

32

dues but does not state OC or OCA conferred a benefit on BEP.  I recommend granting BEP's motion to dismiss as to the quantum meruit claim against it.

## IV.     REMAINING CLAIMS AS TO TI OLDFIELD – BUSINESS JUDGMENT RULE

Based on the above recommendations, the only remaining claims are breach of fiduciary duty and quantum meruit against TI Oldfield as to the waiver of dues in the sale of lots to BEP. TI Oldfield argues in its motion to dismiss that OC and OCA's decisions to not pursue these particular claims against it are protected by the business judgment rule. (ECF # 22-1 pp. 7-8).

"The demand requirement in shareholder derivative suits emerges from the basic principle of corporate governance providing that the board of directors retains the power to direct a business's policies and actions." *Morefield v. Bailey*, 959 F. Supp. 2d 887, 897 (E.D. Va. 2013). "This power includes decisions of whether to pursue lawsuits in the interest of the corporation or shareholders." *Id.* at 897.  "This principle operates hand-in-hand with the business judgment rule, which presumes that the board made its decision on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.* (internal quotation marks omitted).  In South Carolina, "the business judgment rule precludes judicial review of actions taken by a corporate governing board absent a showing of a lack of good faith, fraud, selfdealing or unconscionable conduct." *Dockside Asso. v. Detyens*, 294 S.C. 86, 87, 362 S.E.2d 874, 874 (1987).  "[T]he burden of proving good faith is not on the governing board; the burden of proving a lack of good faith is borne, rather, by those challenging the board's actions." *Id.* at 87, 362 S.E.2d at 874.

The issue is whether OC and OCA's decision to not pursue claims against TI Oldfield to recover the BEP unpaid dues shows a lack of good faith, fraud, selfdealing, or unconscionable conduct.  I recommend finding it does not.  The only references in the Amended Complaint to

business judgment are quotations from case law. (ECF # 52 ¶ 57).  The only allegations arguably applicable to business judgment are that TI Oldfield controls the boards and their failure to seek the remedies sought by Plaintiff shows the boards are conflicted from bringing this action. *Id.* at ¶ 30, ECF # 65 p. 13.  As previously discussed, that TI Oldfield may appoint one, minority director to the boards does not support a finding that it controls them.  That the boards chose not to assert the specific remedies Plaintiff wants to assert also does not show bad faith.[9]

The exhibits to the Amended Complaint show the exercise of business judgment.  A November 1, 2016 letter from OC and OCA to members states they "have been working on issues with turnover from TI" and "are in negotiations with TI regarding turnover matters." (ECF # 52-25 pp. 13-14).  The issues include "the financial situation inherited from TI." *Id.* at p. 14.  Further, "the Boards have legal counsel in place, in the event further action is needed" and negotiations are not successful. *Id.*

A February 15, 2016 opinion letter from OC's counsel discusses the TI Oldfield and BEP transaction. (ECF # 52-25 pp. 2-9).  A May 2016 President's Letter from the OC president states it hired an attorney to review "many legal issues relating to turnover" who is working with OC's accountant to review "the appropriateness of all transactions going back to 2010." (ECF # 52-11 pp. 5-6).  The letter explains "they will have facts and recommendations for us that will then be shared with the Community this summer.  Once all issues have been identified, the Club Board will sit down with TI and present our findings and any claims we might have based on our review and analysis." *Id.* at p. 6.

---

[9] A non-profit corporation in South Carolina has the power "to sue and be sued, complain, and defend in its corporate name." S.C. Code Ann. § 33-31-302(1).

These exhibits show OC and OCA hired counsel to investigate potential claims and chose a particular course of action.  I would find OC and OCA's decisions not to pursue breach of fiduciary duty and quantum meruit claims against TI Oldfield related to the BEP dues are entitled to the protections of the business judgment rule.  Therefore, I recommend dismissing the remaining claims against TI Oldfield.[10]

## V.     PLAINTIFF'S CROSS-MOTION TO AMEND COMPLAINT

Plaintiff's memorandum in opposition to the renewed motions to dismiss includes a cross-motion for leave to amend the Amended Complaint "if the Court determines there are any pleading deficiencies in the Plaintiff's Complaint, per allegations in the Dismissal Motions." (ECF # 65 p. 17).  The cross-motion is the same one made in Plaintiff's memorandum in opposition to the motions to dismiss the original complaint.  The Court granted Plaintiff's original motion, resulting in the Amended Complaint with additional allegations and over 400 pages of exhibits.  Defendants argued the same bases to dismiss the Amended Complaint as they did for the original complaint.

Fed. R. Civ. P. 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires", such that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).  As Plaintiff already got the opportunity to cure the alleged deficiencies, further amendment would be futile.  I recommend denying the cross-motion to amend.

---

[10] Because this recommendation leaves no remaining claims against any Defendant, it is no longer necessary for me to address Defendants' request to stay this action while the OC and OCA actions are pending.

## CONCLUSION

After careful consideration of the parties' arguments, I recommend that the Court grant the motions to dismiss.

**Respectfully submitted this 24th day of July, 2018.**

Kathleen C. Barnes, Special Referee